UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:26-mj-03719-Louis

UNITED STATES OF AMERICA

v.

JOSE CANDELARIO and
ANDRE GARCIA,

Defendants.
_______________________________/

FILED BY AR D.C.

Sep 18, 2026

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - Miami

**CRIMINAL COVER SHEET**

1. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)? No

2. Did this matter involve the participation of or consultation with Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023? No

3. Did this matter involve the participation of or consultation with Magistrate Judge Marty Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024? No

4. Did this matter involve the participation of or consultation with Magistrate Judge Ellen F. D'Angelo during her tenure at the U.S. Attorney's Office, which concluded on October 7, 2024? No

5. Did this matter involve the participation of or consultation with Magistrate Judge Yeney Herandez during her tenure at the U.S. Attorney's Office, which concluded on April 2, 2026? No

Respectfully submitted,

JASON A. REDING QUIÑONES
UNITED STATES ATTORNEY

By: *Breezye Telfair*

Breezye Telfair
Assistant United States Attorney
99 NE 4th Street, Suite 500
Miami, Florida 33132
305-961-9329
Breezye.Telfair@usdoj.gov

AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

Southern District of Florida

United States of America
v.
Jose Candelario and
Andre Garcia,

*Defendant(s)*

Case No. 1:26-mj-03719-Louis

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of August 28-September 17, 2026 in the county of Miami-Dade in the Southern District of Florida, the defendant(s) violated:

| *Code Section* | *Offense Description* |
| --- | --- |
| Title 18 U.S.C. Section 922(g)(1) | Felon in possession of a firearm by Jose Candelario. |
| Title 18 U.S.C. Section 932 | Straw purchasing of firearms by Jose Candelario and Andres Garcia. |

This criminal complaint is based on these facts:

See attached Affidavit.

☑ Continued on the attached sheet.

*Complainant's signature*

Special Agent Braiden Tortorici, ATF

*Printed name and title*

Sworn and Attested to me by Applicant by Telephone (Facetime) pursuant to Fed. R. Crim. P. 4(d) and 4.1

Date: Sept 18 2026

*Judge's signature*

City and state: Miami, Florida

Lauren Louis

*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Braiden Tortorici, being first duly sworn, hereby deposes and states the following:

1. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") and have been so employed since May 2023. I am currently assigned to the ATF Miami Field Division, Group I. Prior to ATF, I completed a bachelor's degree in criminal justice at the University of Cincinnati. I have also been a member of the United States Army since 2018, a commissioned officer since 2022, and currently serve as the executive officer of an Army transportation unit in Miami Florida. As such, I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of or to make arrests for offenses enumerated in Title 18, United States Code, Section 2516(1).

2. As a special agent, I have conducted and participated in numerous investigations concerning violations of federal firearm laws, violations of federal controlled substance laws, and the commission of violent crimes. Through my training and experience I know the methods and tactics used by individuals to acquire, transfer, sell, and possess firearms illegally. I have also received training in the identification, classification and origin of firearms and ammunition that were manufactured.

3. The submission of this affidavit is in support of a criminal complaint that alleges Jose Alejandro CANDELARIO and Andre Jesus GARCIA committed acts consistent with straw purchasing firearms, in violation of Title 18, United States Code, Section 932. The criminal complaint further alleges CANDELARIO possessed a firearm as a previously convicted felon, in violation of Title 18, United States Code, Section 922(g)(1).

4. The statements herein are facts known to me personally from the investigation, as well as information obtained from others who have investigated the matter or have personal knowledge of the facts herein. Because this Affidavit is being submitted for the limited purpose of establishing probable cause for the requested warrant, it does not include every fact known to me about this matter.

**PROBABLE CAUSE**

5. Between August 28, 2026, and September 14, 2026, an undercover law enforcement officer, hereinafter referred to as "UC," contacted CANDELARIO via telephone at phone number ending in 8436, and phone number ending in 2911, to coordinate a controlled purchase of eight (8) firearms. Included in the purchase was a special ordered Staccato 2011 firearm. from CANDELARIO's "gun store" contact. During the investigation, CANDELARIO told the UC about the relationship he shared with an employee at a gun store in the Southern District of Florida.

6. According to CANDELARIO, he would buy firearms from a "gun store," without completing the required 4473 forms. During the investigation, law enforcement identified GARCIA, an employee at Miami Guns Range, a licensed firearms dealer located in Hialeah, Florida. GARCIA's phone number is listed in CANDELARIO's phone under the name "Yoyo."

7. On August 28, 2026, the UC made a recorded call to CANDELARIO at phone number ending in 8436. During the call, the UC requested a custom Staccato 2011 that can accept Glock 9mm magazines. CANDELARIO was also informed that the UC intended to ship the gun to the Dominican Republic. CANDELARIO stated he would ask his "gun store" contact (referring to GARCIA).

8. Later, on the same day, CANDELARIO stated he would be able to obtain the custom order firearm, but the UC would have to pay $200.00 on top of the price of the firearm, which would go to GARCIA. During the recorded call, CANDELARIO also offered an AR-15 style rifle and a shotgun. CANDELARIO offered to have someone "cut the barrel," which would convert the shotgun into a short barrel shotgun.

9. On September 1, 2026, the UC made a recorded call to CANDELARIO at phone number ending in 8436. During the call, CANDELARIO mentioned he was waiting on his "plug" (referring to GARCIA) to confirm the availability of the firearm.

10. On September 4, 2026, during a recorded call with the UC, CANDELARIO referred to GARCIA as his "gun store" contact, and stated GARCIA has someone he pays to purchase the firearms on other's behalf to satisfy the required 4473 paperwork. During the same recorded call, CANDELARIO told the UC that he had firearms ready for purchase and would have additional firearms for purchase the following week. The UC told CANDELARIO about childcare issues. CANDELARIO told the UC to bring the child because the child would be an easy cover if UC were pulled over by police. During the call, audio recording captured CANDELARIO touting himself as the go-to person to acquire firearms from the Miami area.

11. During a recorded phone call on September 8, 2026, CANDELARIO told the UC that he had just obtained a "Bodyguard" pistol from GARCIA. The UC knew that a "Bodyguard," referred to a Smith and Wesson 9mm pistol that is marketed under the name bodyguard. CANDELARIO stated that GARCIA dropped the pistol to CANDELARIO at CANDELARIO's home located in North Miami-Dade County. When the UC asked to meet GARCIA, CANDELARIO referred to GARCIA as his "dog dog," and stated GARCIA does not do business

without anyone other than CANDELARIO. CANDELARIO added that before selling firearms to the UC, he bought firearms from GARCIA.

12. Later in the day, at approximately 1:05 p.m., from phone number ending in 2911, CANDELARIO sent the UC a picture of four (4) different model Staccato 9mm pistols on top of a glass display case. In a subsequent phone call, CANDELARIO told the UC that GARCIA wanted $3,400.00 for the large Staccato firearm and $2,950.00 for the smaller model Staccato firearms.

13. Law enforcement is aware that GARCIA is the manager of Miami Guns Range, which has glass display cases. In a previous conversation, CANDELARIO told the UC that he would pick up firearms directly from GARCIA, inside of Miami Guns Range. CANDELARIO stated that GARCIA had Miami Guns Range "under control." For the Staccato firearm, CANDELARIO demanded the money up front and stated he would get the firearm to the UC once the firearm was available to be picked up.

14. On September 14, 2026, at approximately 9:59 a.m., the UC arrived at CANDELARIO's home in North Miami-Dade County. At approximately 10:02 a.m., CANDELARIO retrieved a camouflage box from a vehicle parked at his residence. CANDELARIO gave the box to the UC. Concealed within the camouflaged box was an assortment of firearms, gun magazines, and ammunition.

15. At approximately 10:06 a.m., CANDELARIO opened the trunk of another vehicle parked at his residence. From the second vehicle, CANDELARIO retrieved more firearms and handed the same to UC 2. At approximately 10:08 a.m., while sitting inside of the UC's vehicle, CANDELARIO told the UC that he had additional firearms for sale, while he dialed the phone number for contact saved as "Yoyo," which law enforcement later learned was GARCIA.

16. CANDELARIO spoke with GARCIA on speaker phone while in the UC's vehicle. The UC recognized GARCIA's voice as the UC had previous interactions with GARCIA. CANDELARIO told GARCIA to make sure to not leave the "Bill of Sale" in the box on the next purchase because it was reflecting as $200.00 for the pistol he acquired from GARCIA the day prior. GARCIA replied, "that's the shops, Dumbass." CANDELARIO then asked GARCIA if the Staccato firearm ordered from a few days was ready, GARCIA told CANDELARIO yeah to let him know in advance to put the requested firearm to the side (referring to GARCIA notifying CANDELARIO he needed to communicate better to prepare the order.) The conversation between CANDELARIO and GARCIA was recorded by devices in the UC's vehicle.

17. At approximately 10:10 a.m., CANDELARIO asked $400.00 for the small Bodyguard pistol; $800.00 for a 10mm pistol; and $1,400.00 for the "AK." CANDELARIO stated he had a shotgun in another vehicle that was also for sale, and two Glocks. The UC agreed to purchase all the firearms CANDELARIO had for sale. In total, the UC purchased the following 10 guns and associated items from CANDELARIO:

**(1)** One (1) PALMETTO STATE ARMORY M4A1 CARBINE, .556 CALIBER RIFLE, S/N: W3003187;

**(2)** One (1) VETERANS TACTICAL SOLUTIONS, LLC VTS-15 MULTI CALIBER RIFLE, S/N: VTS01425;

**(3)** One (1) MAVERICK ARMS MODEL: 88, 12 GAUGE SHOTGUN; S/N: MV2175606;

**(4)** One (1) GLOCK MODEL 26 GEN4; S/N: AKPD693

**(5)** One (1) GLOCK MODEL 30, 45 CALIBER PISTOL, S/N: VHM147 – Loaded with 9 rounds of 45 caliber ammunition;

(6) One (1) SMITH & WESSON, MODEL BODYGUARD, 380 CALIBER PISTOL, S/N: ENW6482;

(7) One (1) HS PRODUKT (IM METAL) MODEL XDM ELITE, 10 CALIBER PISTOL, S/N: BB532564 – Loaded with 15 rounds of 10mm caliber ammunition;

(8) One (1) ZASTAVA MODEL PAP M92 PV, 7.62 CALIBER PISTOL, S/N: M92PV040549 – Loaded with 16 rounds of 7.62 CALIBER ammunition;

(9) Two (2) PRIVATELY MADE FIREARMS (PMF)

18. At approximately 10:19 a.m., the UC drove towards Miami Gun Range with CANDELARIO seated in the passenger seat. CANDELARIO called GARCIA to order a second Staccato 9mm pistol firearm. The UC stated again that the Staccato firearms were custom orders for his client in the Dominican Republic. CANDELARIO offered the UC the opportunity to enter Miami Guns Range for the purpose of speaking directly with GARCIA and to provide GARCIA with the money for the Staccato firearm. The UC declined the offer and left CANCELARIO at a gas station near Miami Guns Range. Before CANDELARIO left the UC's vehicle, CANDELARIO called GARCIA and confirmed the price of the Staccato firearm. GARCIA stated that he had already set aside the larger Staccato firearm, which was for sale for $3,550.00. During the back-and-forth conversation, the UC confirmed the purchase of two (2) Staccato firearms. CANDELARIO agreed to front the money for the purchase of the second Staccato firearm.

19. During the same conversation, which was recorded, CANDELARIO asked GARCIA if it was possible to get a second Staccato firearm. GARCIA said that he can do it, but it must be today, and that he had to put both on the same thing today (referring to placing both firearms in the same Miami Guns Receipt or ATF Form 4473). GARCIA added that he has a third

party come into the store to sign the paperwork (referring to ATF 4473) and purchase the firearms for him. CANDELARIO asked GARCIA if he wanted him to pay for both right there. GARCIA advised CANDELARIO to park at the Sunoco gas station and not near his truck. At approximately 10:31 a.m., the UC dropped off CANDELARIO at the SUNOCO gas station adjacent to Miami Gun Range where GARCIA worked, which is located at 1010 E 49th St., Hialeah, 33013.

20. CANDELARIO stepped out of the UC's vehicle and hung out in the front entrance of the Sunoco. At approximately 10:31 a.m., GARCIA was seen walking away from Miami Guns Range towards the Sunoco where CANDELARIO agreed to meet at. At approximately 10:37 A.M., CANDELARIO called \the UC to pick him up near the Sunoco. At approximately 10:39 a.m., CANDELARIO entered the UC's vehicle and stated he met with GARCIA and claimed he handed GARCIA the $7,100.00 for both Staccato pistols.

21. CANDELARIO sat in the UC's vehicle and stated he had previously bought two identical Staccatos. While driving back to CANDELARIO's residence, CANDELARIO added that he has been working with GARCIA for at least two (2) years. CANDELARIO advised that GARCIA would have the firearms available later that afternoon. At approximately 10:59 a.m., the UC dropped off CANDELARIO at his home in North Miami-Dade County.

22. At approximately 2:12 p.m., the UC picked up CANDELARIO at his home residence and drove him to Miami Guns Range. During the drive, the UC directed CANDELARIO to call GARCIA. The phone call between CANDELARIO and GARCIA was recorded by devices in the UC's vehicle. During the phone call, GARCIA stated that the Staccato pistols should be ready in the next hour. While driving to Miami Guns Range, CANDELARIO explained that the Staccato firearms were probably not ready because GARCIA is waiting for a third party to sign them off at the store (referring to a straw purchaser signing the ATF Form 4473). At approximately

2:35 p.m., the UC parked at Miami Guns Range. CANDELARIO exited the vehicle. While out of the vehicle, law enforcement set up in the area observed GARCIA exit the gun store. CANDELARIO and GARCIA were observed meeting outside of Miami Guns Range. Law enforcement observed GARCIA hand money to CANDELARIO. At approximately 2:55 p.m., CANDELARIO returned to the UC's vehicle and handed the UC the $3,550.00 that was provided to CANDELARIO to purchase the Staccato pistol.

23. Later that evening, CANDELARIO contacted the UC via Facetime and displayed two (2) Staccato pistols. The video call depicted images of CANDELARIO holding the Staccato guns with tags from Miami Guns Range serial numbers still attached to the pistol. Law enforcement used the recorded FaceTime call to capture the serial numbers. During a search on a law enforcement database, law enforcement learned that the pistols CANDELARIO held up were purchased by Miami Guns Range, directly from the manufacturer Strayer Tripp Int, "STI" Staccato, which is out of Florence, Texas, on September 1, 2026.

24. On September 17, 2026, law enforcement made a probable cause arrest of GARCIA. At the time of his arrest, GARCIA was in possession of approximately $15,600.00 in U.S. Currency and two (2) firearms: one (1) GLOCK GMBH, MODEL 17, 9MM, S/N: BLEU527; and one (1) GLOCK GMBH, MODEL 43X, 9MM, S/N:CGYH073. When GARCIA was arrested, approximately $1,100.00 of the approximate $15,000 in U.S. Currency had serial numbers that matched the ATF Investigative funds that was provided to CANDELARIO during the ATF Undercover (UC) purchase of firearms from CANDELARIO on September 14, 2026.

25. During the post-Miranda custodial interview of GARCIA on September 17, 2026, GARCIA indicated to ATF Special Agent Braiden Tortorici and ATF Task Force Officer Robert Thompson that he had known CANDELARIO for approximately one year. GARCIA also

mentioned how he made approximately $400 from the STACCATO sale, and that a third-party individual had also made approximately $500-$600 from the STACCATO sale (this is the same individual that conducted the multiple sale purchase on September 14th, 2026, at Miami Guns range). GARCIA mentioned to law enforcement that he had told the third-party individual that he had a buddy who needed two (2) STACCATO's and that this buddy didn't want to come to the shop/gun store. GARCIA stated that the third-individual asked GARICA if he trusted this individual (referring to GARCIA's "buddy"). GARICA stated that the third-party individual mentioned he was good to do it (referencing coming to the gun store and signing the ATF Form 4473's) since GARCIA said he had trusted his buddy for the most part. This is not a complete verbatim transcription of the custodial interview, but a summarization of statements made by GARCIA to law enforcement. In the post-miranda custodial interview, GARCIA indicated that he was aware of the actual purchaser not being listed on ATF Form 4473, in violation of 18 USC 922 (a)(6), which is a felony.

26. On September 17, 2026, law enforcement made a probable cause arrest of CANDELARIO. When CANDELARIO was arrested he was in possession of the two (2) Staccato pistols that were previously captured on FaceTime video. Also on September 17, 2026, law enforcement learned that a report of a multi-sale was reported by Miami Guns Range on September 14, 2026. The multi-sale report was sent to ATF from Miami Guns Range as required by federal law. The report listed the sale of two (2) Staccato pistols and listed the pistols as having the same serial numbers – with the same serial numbers that were captured in the FaceTime video chat between the UC and CANDELARIO. On September 17, 2026, law enforcement seized two (2) Staccato pistols from CANDELARIO, and the pistols bear the same serial numbers that were reported sold by Miami Guns Range. The person listed as the buyer is not GARCIA, CANDELARIO, or the UC.

27. During the probable cause arrest of CANDELARIO on September 17, 2026, CANDELARIO was in possession of six (6) firearms, to include the following:

(1) One (1) BEAR CREEK ARSENAL, MODEL BC9, 9mm, S/N: L00935

(2) One (1) HS PRODUKT, MODEL XD9, 9MM, S/N: BF483276

(3) One (1) GLOCK GMBH, MODEL 41 GEN4, 45 CAL, S/N: BYZK974

(4) One (1) ANDERSON MANUFACTURING, MODEL AM-15, MULTI-CAL, S/N: 15049077

(5) One (1) STI (STRAYER TRIPP INTL, MODEL STACCATO CS, 9MM, S/N: P416969

(6) One (1) STI (STRAYER TRIPP INTL, MODEL STACCATO CS, 9MM, S/N:P417123

28. All 16 of the firearms and over 100 rounds of assorted caliber ammunition that were purchased and seized between September 14, 2026, and September 17,2026, which are referenced in this complaint, were examined by an ATF Nexus Expert, who determined they were not manufactured in the state of Florida and therefore affected interstate and/or foreign commerce. The firearms were also test fired and were deemed operable.

29. Prior to these undercover purchases, CANDELARIO had previously been convicted of a crime punishable by more than one year in prison and is currently on probation for a robbery that was committed in Las Vegas, Nevada. CANDELARIO is a convicted felon and his right to bear arms has not been restored. Therefore, CANDELARIO is a prohibited person and cannot lawfully possess a firearm.

**CONCLUSION**

30. Based on the above information, your affiant believes there is probable cause to charge Jose Alejandro CANDELARIO and Andre Jesus GARCIA committed acts consistent with straw purchasing firearms, in violation of Title 18, United States Code, Section 932. The criminal complaint further alleges CANDELARIO possessed a firearm as a previously convicted felon, in violation of Title 18, United States Code, Section 922(g)(1).

I have reviewed a certified copy of the judgement and sentence for CANDELARIO Las Vegas, Nevada case number C-26-398503-2. In the certified documents is a plea agreement, judgement and sentence. CANDELARIO signed that he understood his rights, waived his rights and acknowledged voluntariness of the plea. CANDELARIO was informed that he was pleading guilty to a felony offense that is punishable by one year or more of imprisonment.

**FURTHER YOUR AFFIANT SAYETH NAUGHT**

[signature]

BRAIDEN TORTORICI, SPECIAL AGENT
BUREAU OF ALCOHOL, TOBACCO,
FIREARMS, AND EXPLOSIVES

Attested to by the Affiant in person, in chambers, at Miami, Florida on this 18 day of September 2026.

[signature]

HONORABLE LAUREN F. LOUIS
UNITED STATES MAGISTRATE JUDGE